IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS THACKER, | ) | Case No. 1:18-cv-1647 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OF OPINION** |
| SOCIAL SECURITY | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

**I.      Introduction**

Plaintiff, Thomas Thacker, seeks judicial review of the final decision of the

Commissioner of Social Security denying his application for disability insurance benefits

("DIB") under Title II of the Social Security Act.  The parties consented to my jurisdiction.  ECF

Doc. 14.  Because substantial evidence supported the ALJ's decision and because Thacker has

not identified any error of law in the ALJ's evaluation of his claim, the final decision of the

Commissioner must be AFFIRMED.

**II.      Procedural History**

Thomas Thacker protectively applied for DIB on July 31, 2014.  (Tr. 208-214).  He

alleged a disability onset date of July 10, 2013.  (Tr. 208).  His application was denied initially

on September 23, 2014 (Tr. 119-121) and on reconsideration on November 16, 2015.  (Tr. 129-

135).  Thacker requested a hearing and Administrative Law Judge ("ALJ") Cheryl Rini heard the

case on July 7, 2016.  (Tr. 56-91).  However, she stopped working at the Cleveland hearing

office before issuing a decision. On August 23, 2017, a second hearing was conducted by ALJ Peter Beekman. (Tr. 34-54). Prior to the hearing, Thacker submitted proposed findings of fact in which he also reminded ALJ Beekman that he had earlier requested consideration of a closed period of disability between July 11, 2013 and September 14, 2014. (Tr. 509, 140). On August 31, 2017, ALJ Beekman issued a decision finding that Thacker was not disabled during that time. (Tr. 7-23). The Appeals Council denied Thacker's request for further review, rendering the ALJ's conclusion the final decision of the Commissioner. (Tr. 1-5). On July 17, 2018, Thacker filed this action to challenge the Commissioner's denial of his claim. ECF Doc. 1.

## III. Evidence

### A. Relevant Medical Evidence[1]

Thacker was born on June 18, 1971 and was 42 years old on his alleged onset date. (Tr. 208). He completed the 12th grade and had work experience as an automobile assembler. (Tr. 21).

Thacker has rheumatoid arthritis. In May 2009, he began having discomfort in his right ankle. Dr. Alan Davis diagnosed rheumatoid arthritis on right with subtalar involvement. (Tr. 296). On August 16, 2010, Thacker underwent a right calcaneal arthrodesis. (Tr. 311). An x-ray on November 8, 2010 showed stable post-surgical changes, post-traumatic and degenerative changes of the right ankle. (Tr. 314).

Podiatrist Jill Hosking treated Thacker for left plantar fasciitis and painful left heel from July 27, 2012 through February 21, 2013. (Tr. 352). She reported that Thacker responded well to the surgery. On January 15, 2013, Thacker reported to Dr. Hosking that he was going to physical therapy and the gym. He was doing much better than before the surgery. However, he

---

[1] The transcript is filed as ECF Doc. 10.

went to work for four hours and developed severe pain.  He wanted to continue to be off work.  (Tr. 358.)  By February 21, 2013, he had finished physical therapy.  He still had intermittent mild pain if he was on his feet for extended periods of time, but he wanted to return to work on March 6, 2013 without restrictions.  Dr. Hosking gave custom molded orthotics to Thacker and released him to return to work on March 6, 2013 as he requested.  (Tr. 358).

Thacker met with an orthopedist, Dr. Daniel Zanotti, on June 19, 2013.  (Tr. 372-373).  On examination, Dr. Zanotti noted an obvious flatfoot deformity in Thacker's left foot.  Thacker had pain around the posterior tibial tendon, especially around the malleolus.  He had pain with resisted inversion maneuvers.  Dr. Zanotti recommended using an ankle brace and gave Thacker a new prescription for new arch supports.  (Tr. 373).

Thacker's alleged closed period of disability commenced on July 10, 2013.  On that date, he followed-up with Dr. Zanotti.  Thacker complained of continued pain, but he had not picked up his arch supports yet.  (Tr. 371).  On August 12, 2013, Thacker reported that his orthotic supports had given him quite a bit of relief for the past three weeks.  He continued to have pain along the inside of his ankle.  (Tr. 368).  Physical examination showed swelling in the leg and ankle but full range of motion.  (Tr. 369).  On August 15, 2013, Dr. Zanotti completed a form stating that Thacker was restricted to working six to eight-hour work days for six weeks.  (Tr. 433).  An MRI on October 3, 2013 showed splitting of the posterior tibial tendon with multifocal hind foot and mid foot arthritis.  (Tr. 365, 381-382).

On December 4, 2013, Thacker underwent another surgery, a left foot triple arthrodesis and Achilles lengthening performed by Dr. Shana Miskovsky.  (Tr. 482).  Thacker followed up with Dr. Miskovsky on January 28, 2014.  His foot pain was minimal; he had some generalized soreness related to his rheumatoid arthritis.  (Tr. 416).  Dr. Miskovsky gave him a non-

3

weightbearing boot to wear until February 5, 2014. (Tr. 418). Dr. Miskovsky completed a form for Thacker's work recommending light duty work from March 4, 2014 until June 4, 2014. (Tr. 424).

Thacker met with Dr. Miskovsky on February 25, 2014. Thacker was "comfortable and not having any significant pain." His ankle felt sore or stiff occasionally and he was using a knee walker. (Tr. 412). X-rays of the left foot showed appropriate alignment, intact hardware, and early healing across the fusion sites. Thacker was given a prescription for physical therapy. Dr. Miskovsky recommended weaning from the knee walker to a Cam Walker boot and crutches. (Tr. 414).

Thacker saw Dr. Vagesh M. Hampole on March 28, 2014. Thacker did not have any pain or swelling. Dr. Hampole observed decreased range of motion in Thacker's neck, wrists and right ankle. Dr. Hampole noted normal gait, coordination, and reflexes as well as intact motor and sensory functioning. (Tr. 443).

Dr. Zanotti examined Thacker on April 8, 2014. Thacker had weaned from crutches at physical therapy. He had some occasional soreness in his lateral foot with exercise or walking. He had some numbness in the bottom of his foot from plantar fascia release. (Tr. 403). Thacker was able to bear weight with no limping. Dr. Zanotti observed mild swelling of the left foot, but full strength, normal sensation, and normal gait. He noted that Thacker was neurovascularly intact. (Tr. 406-407). X-rays of the left foot on April 8, 2014 showed osteopenia and stable postsurgical changes. (Tr. 477).

### B.    Opinion Evidence

#### 1.    Treating Physician – Shana Miskovsky, M.D. - February 2014

Dr. Miskovsky completed a medical certification for disability benefits on February 25, 2014.  (Tr. 110-111).  She indicated that Thacker was "totally disabled" from October 22, 2013 and through September 14, 2014.  (Tr. 411).

#### 2.    State Agency Reviewing Physicians

Anne Prosperi, D.O. reviewed Thacker's records on September 22, 2014 and opined that he had the ability to perform light work with some additional limitations.  (Tr. 96-100).

On January 5, 2015, William Bolz, M.D., reviewed Thacker's records and affirmed the opinions of Dr. Prosperi.  (Tr. 109-114).

### C.    Relevant Testimonial Evidence

#### 1.    Thacker's Testimony

Thacker testified at the second hearing on August 23, 2017.  (Tr. 38-47).  Thacker alleged disability due to rheumatoid arthritis ("RA") and pain.  He underwent a total ankle reconstruction and fusion and Achilles lengthening in 2011.  (Tr. 38, 48).  He was taking medication for his rheumatoid arthritis with no negative side effects.  (Tr. 40).

Thacker stated that he underwent plantar fasciitis surgery in August 2013.[2]  (Tr. 48). After his surgery, Thacker was non-weightbearing for four months.  He started physical therapy about six months after the surgery.  (Tr. 41).  Thacker was required to stop taking his medication for RA six weeks before and six weeks after this surgery.  During that time, he experienced significant, chronic pain in his wrists, knees, shoulders and fingers.  (Tr. 43-44).  After the

---

[2] The surgery was actually performed on December 4, 2013.  (Tr. 482).

surgery, he used a knee scooter for four months.  (Tr. 43).  His wife, son and mom helped him

during the recovery period.  (Tr. 47).

## 2.      Testimony of Gail Clear, Vocational Expert

Vocational Expert ("VE"), Gail Clear, also testified.  (Tr. 48-53).   Ms. Clear considered

Thacker's past work to be an automobile assembler.  (Tr. 48).

The VE testified that an individual of Thacker's age, education and past work experience

who was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently; could

stand/walk and sit for six out of eight hours; could frequently pedal; frequently use a ramp or

stairs, but never a ladder, rope or scaffold; could constantly balance; frequently stoop, kneel

crouch and crawl; could constantly reach and frequently handle, finger and feel; who had no

visual limits or communication deficits; who must avoid high concentrations of cold and

wetness; who had no limitations related to heat, humidity, noise, vibration, smoke fumes, dust or

pollutants; who must avoid dangerous machinery and unprotected heights, would be able to

perform the jobs of cashier II, price marker, and order caller.  (Tr. 50).

If the individual was limited to lifting/carrying 10 pounds occasionally and 10 pounds

frequently; could stand/walk two out of eight hours; sit for six out of eight hours; could

constantly push/pull, but only occasionally foot pedal; could occasionally use ramps or stairs, but

never a ladder, rope or scaffold; could frequently balance; occasionally stoop, kneel, crouch and

crawl, the VE opined that he could perform the jobs of food and beverage order clerk, document

preparer and lens inserter.  (Tr. 51).  There were a significant number of all of these jobs in the

national economy.  (Tr. 50-51).

The VE opined that there would not be any jobs for this individual if he was limited to

sedentary work; could only lift and carry a maximum of five pounds; was limited to standing and

walking for one hour in an eight-hour day; could occasionally reach, handle, finger and feel; and

would need to take 15-minute breaks ever hour. (Tr. 52).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3.  During the relevant time period, Thacker had the residual functional capacity
    to perform light work; he could occasionally lift and carry 20 pounds;
    frequently lift and carry 10 pounds; could stand, walk or sit for six hours in an
    eight-hour workday; could constantly push or pull within the lifting and
    carrying limitations; he could frequently use foot pedals; frequently climb
    stairs and ramps; could never climb ladders, ropes or scaffolds; could
    constantly balance and frequently stoop, kneel, crouch or crawl; could
    constantly reach and frequently handle, finger and feel; he had no visual or
    communication limitations; he was required to avoid high concentrations of
    extreme cold and wetness; he could have constant exposure to extreme heat,
    humidity, noise, vibration, smoke and fumes; he was required to avoid
    workplace hazards. (Tr. 14).

11. There were jobs existing in significant numbers in the national economy that
    Thacker could perform. (Tr. 22).

Based on all his findings, the ALJ determined that Thacker was not disabled during the closed

period of July 10, 2013 through September 14, 2014. (Tr. 23).

## V.    Law & Analysis

### A.    Standard of Review

This court's review is limited to determining whether there was substantial evidence in

the record to support the ALJ's findings of fact and whether the correct legal standards were

applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v.*

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); see also *Her v. Comm'r of Soc. Sec.*, 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." See *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards. If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec*. 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.

1996); accord *Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue,* No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering a Social Security benefits application, the Social Security Administration must follow a five step sequential analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden shifts to the agency to produce evidence that a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B.      Residual Functional Capacity, Pain and Credibility

Thacker argues that the ALJ's RFC determination is not supported by substantial evidence because he did not conduct a proper pain and credibility analysis. By regulation, the ALJ must consider all objective medical evidence in the record, including medical signs and

laboratory findings, when such evidence is produced by acceptable medical sources.  See 20 C.F.R. § 404.1513.  The agency states it will "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  Further, the agency states that it "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §404.1529(c)(2).  The agency must follow and apply its own procedural regulations, and failure to do so warrants remand.  *Minor v. Comm'r of Soc. Sec.* 513 F. App'x 417, 434 (6th Cir. 2013).

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986) provides the proper analytical framework:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.  The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.  Both alternative tests focus on the claimant's "alleged pain." Although the cases are not always clear on this point, the standard requires the ALJ to assume, for the sake of analysis, that the claimant has the pain he asserts and then to determine whether objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

The ALJ included a thorough discussion of Thacker's medical treatment in his decision. He recognized that Thacker's impairments could "be expected to produce some discomfort and functional limitations," but that, "the objective evidence [did] not support his contentions regarding the severity, chronicity and/or frequency of his symptoms." (Tr. 16). The ALJ's decision includes many references to Thacker's complaints of pain. For example, the ALJ noted that Thacker had significant pain around the posterior tibial tendon on the left side in October 2013. (Tr. 17). However, after Thacker's second surgery, there were several treatment notes indicating that he had little to no pain. The ALJ referred these in his decision:

- The claimant reported on January 26, 2014 that he had minimal foot pain and he was seven weeks status-post surgery (Exhibit 6F:16). (Tr. 18).
- The claimant was 2.5 months post-triple arthrodesis. He was comfortable and not having any significant pain. (Tr. 18).
- On March 28, 2014, it was noted the claimant was doing okay and all joints were stable (Exhibit 7F:9). There was no acute pain or swelling. (Tr. 18).
- Examination on April 2, 2014 noted the claimant was in no acute distress (Exhibit 5F:15). * * * The claimant reported he was doing well and in minimal pain. (Exhibit 6F:3). (Tr. 18-19).
- The claimant reported on April 8, 2014 that he was doing well and he was in minimal pain. (Exhibit 9F:6). (Tr. 19).
- Dr. Hampole noted on June 24, 2014, that the claimant continued to be continually stable (Exhibit 7F:7). All of his joints were stable with no acute pain or swelling. (Tr. 19).

Thacker does not argue that these treatment notes did not accurately characterize his condition. Nor does he offer any explanation as to why he reported to his doctors that he was in minimal pain but now argues that his pain was so severe that he could not work during the time in question. Thus, it does not appear that the objective medical evidence supports Thacker's alleged severity of pain.

Thacker argues that the ALJ failed to consider his testimony regarding his daily activities. ECF Doc. 12 at 8. Thacker cites his testimony regarding his inability to do daily activities following his second surgery. But the ALJ acknowledged that Thacker's abilities were greatly

11

reduced during this time period. (Tr. 20-21). The ALJ then noted that, for much of the relevant

time period, Thacker was reporting little pain. In April 2014, he reported some soreness after

"walking or exercising." (Tr. 19, 403). The medical evidence regarding Thacker's daily

activities provides substantial evidence in support of the ALJ's decision.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry.

As the Social Security Administration has recognized in a policy interpretation ruling on

assessing claimant credibility, in the absence of objective medical evidence sufficient to support

a finding of disability, the claimant's statements about the severity of his or her symptoms will

be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of
> impairment than can be shown by objective medical evidence alone, the
> adjudicator must carefully consider the individual's statements about symptoms
> with the rest of the relevant evidence in the case record in reaching a conclusion
> about the credibility of the individual's statements if a disability determination or
> decision that is fully favorable to the individual cannot be made solely on the
> basis of objective medical evidence.

Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing

the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996); *See also, Wines*

*v. Comm'r Soc. Sec.,* 268 F. Supp.2d 954, 957 (N.D. Ohio 2003).

Similarly, 20 C.F.R. 416.929(c)(3)(i)-(vi) provides:

> We must always attempt to obtain objective medical evidence and, when it is
> obtained, we will consider it in reaching a conclusion as to whether you are
> disabled. However, we will not reject your statements about the intensity and
> persistence of your pain or other symptoms or about the effect your symptoms
> have on your ability to work … solely because the available objective medical
> evidence does not substantiate your statements.

When the objective medical evidence does not substantiate the claimant's subjective

complaints, the ALJ must assess the credibility of the claimant. The ALJ's findings as to

credibility are entitled to deference because he has the opportunity to observe the claimant and

assess his subjective complaints.  *Buxton v. Halter,* [246 F.3d 762, 773](#) (6th Cir. 2001).  However,

the ALJ cannot decide credibility based solely upon an "intangible or intuitive notion about an

individual's credibility.""  Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4.  Rather, such

determinations must find support in the record.  When a claimant's complaints regarding

symptoms, or their intensity and persistence, are not supported by objective medical evidence,

the ALJ must make a determination of the credibility of the claimant in connection with his or

her complaints "based on a consideration of the entire case record."

The regulations set forth factors that the ALJ should consider in assessing credibility.

These include the claimant's daily activities; the location, duration, frequency, and intensity of

the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of

medication; and treatment or measures, other than medication, taken to relieve pain. [20 C.F.R. §](#)

[416.929](#)(c)(3)(i)-(vi).  If the ALJ rejects the claimant's complaints as incredible, he must clearly

state his reasons for doing so.

Here, the ALJ satisfied the regulations and properly evaluated the credibility of Thacker's

disability and pain claims.  As already noted, the ALJ referred to several treatment notes in

which Thacker reported minimal pain.  The ALJ also stated:

> The claimant's allegations are consistent with respect to the nature of his
> symptoms.  However, his allegations that his symptoms are so severe that he
> cannot perform work at substantial gainful activity levels are not consistent in
> light of the evidence of record and activities consistent with the ability to perform
> a range of light work.  The claimant stated he was disabled due to rheumatoid
> arthritis, fusions in both ankles, ankle and foot pain, hand and finger swelling,
> chronic joint pain and discomfort.  Although the claimant has severe impairments,
> they are not work preclusive.  The medical evidence shows that you [sic] have
> severe impairments that limit him; however, they do not keep him from all
> activities.  The claimant stated that subsequent to his surgery and he was non-
> weight bearing for four months which is supported by the evidence of record.
> Post-operative examination from left ankle fusion and Achilles tendon
> lengthening noted the claimant was doing well with minimal pain.  By April
> 2014, he did not have a limping gait and there was mild swelling with no atrophy.

13

Foot x-ray in July 2014 showed stable postsurgical changes. Rheumatoid arthritis examination noted some decreased range of motion in the neck, wrists and ankles. There was no pain, swelling, or deformities. He had intact motor strength, sensation, reflexes and gait. There is no evidence that the claimant's use of prescribed medication is accompanied by side effects that would interfere significantly with his ability to perform work within the restrictions outlined in this decision. No treating source refers to the claimant as having incapacitating or debilitating symptoms that would prevent him from returning to the workplace at a reduced level of exertion such as in the performance of light work, or has otherwise described the claimant as "totally and permanently disabled" by his impairments and complaints.[3] In summary, the evidence does not corroborate the claimant's allegations of symptoms attributed to his impairments to an extent that would preclude the performance of light work with the restrictions stated above.

(Tr. 21). The ALJ adequately explained his assessment of the credibility of Thacker's claims.

His decision referred to several medical records in which Thacker reported minimal pain. The

ALJ explained why he did not find Thacker's complaints entirely credible. The fact that

Thacker's own assessment of the record might have led to a different conclusion is not sufficient

to overturn the ALJ's conclusion. Thacker has failed to establish that the ALJ erred in

considering Thacker's complaints of pain or in his credibility evaluation. And Thacker has not

shown that the ALJ failed to follow proper legal procedures in evaluating the claim.

---

[3] Dr. Miskovsky completed a form stating that Thacker was totally disabled. Thacker does not challenge this part of the ALJ's decision. Presumably because, elsewhere in the ALJ's decision, he assigned significant weight to portions of Dr. Miskovsky's opinion but noted that decisions regarding whether an individual is "disabled" is an administrative finding and is an issue reserved to the Commissioner. (20 CFR 404.1527(e)(1)). Thus, it appears that the ALJ correctly evaluated Dr. Miskovsky's opinion despite his statement that no treating physician described the claimant as totally and permanently disabled.

**VI.     Conclusion**

Because substantial evidence supported the ALJ's decision and because Thacker has not

identified any error of law in the ALJ's evaluation of his claim, the final decision of the

Commissioner is AFFIRMED.

IT IS SO ORDERED.


Dated: May 21, 2019

Thomas M. Parker
United States Magistrate Judge